1   STEPHANIE M. HINDS (CABN 154284)
    United States Attorney
2
    THOMAS A. COLTHURST (CABN 99493)
3   Chief, Criminal Division

4   JARED S. BUSZIN (NYBN 5285838)
    Assistant United States Attorney
5
         450 Golden Gate Avenue, Box 36055
6        San Francisco, California 94102-3495
         Telephone: (415) 436-7199
7        FAX: (415) 436-7234
         Jared.Buszin@usdoj.gov
8
    Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13   UNITED STATES OF AMERICA,            )   **CASE NO. 22-cr-389-RS**
                                          )
14            Plaintiff,                   )   **MEMORANDUM IN SUPPORT OF UNITED**
                                          )   **STATES' MOTION FOR DETENTION**
15       v.                                )
                                          )   Date:  October 28, 2022
16   LUIS CRUZ,                            )   Time:  10:30 a.m.
              a/k/a "Luis Arias,"          )   Court: Hon. Thomas S. Hixson
17                                         )
                                          )
18            Defendant.                   )
                                          )
19   _____)

20

21

22

23

24

25

26

27

28

UNITED STATES' DETENTION MEMORANDUM     1
22-cr-389-RS

## INTRODUCTION

The defendant, Luis Cruz, is a 28-year-old Honduran national with significant ties outside of this District—including a wife and kids in Honduras—who has made a living for the past nine years selling drugs in the Bay Area and elsewhere in the United States.  He has now been arrested on narcotics-related charges *ten times* since August 2013.  After his most recent arrest on August 17, 2022, a federal grand jury returned an indictment charging Mr. Cruz with seven counts of distribution and/or possession with intent to distribute a wide array of drugs, including fentanyl, methamphetamine, and heroin.  The amount of drugs in Mr. Cruz's possession at the time of his arrest is staggering.  Among other things, law enforcement seized from Mr. Cruz's backpack ***more than 1.3 kilograms of fentanyl***,[1] ***which equates to hundreds of thousands of lethal doses***.[2]  In addition to this fentanyl, law enforcement also found in Mr. Cruz's backpack approximately 179 grams of methamphetamine and 99 grams of heroin along with a large knife and other indicia of distribution, as shown below.



---

[1] Testing of the narcotics seized from Mr. Cruz is ongoing.  Accordingly, all weights referred to in this memorandum refer to gross weights.

[2] The DEA estimates that two milligrams of fentanyl can be lethal depending on a person's body size, tolerance, and past usage.  *Facts About Fentanyl*, DEA, https://www.dea.gov/resources/facts-about-fentanyl.

The seizure of these items followed two prior controlled purchases in which Mr. Cruz sold fentanyl and methamphetamine to an undercover SFPD officer in the Tenderloin of San Francisco.  In the course of its investigation, law enforcement uncovered evidence—including the defendant's own admissions—demonstrating that Mr. Cruz commuted every evening from his residence in Berkeley to the Tenderloin, where he would sell a substantial volume of drugs, as evidenced by the drugs seized on August 17 and the approximately $18,000 of U.S. currency found in his bedroom that same day. ***Notably, the conduct giving rise to the instant indictment all occurred at a time when Mr. Cruz was on probation and GPS location monitoring stemming from a 2021 arrest in Oakland on drug-related charges***.  Now, for the first time, Mr. Cruz faces federal prosecution and the prospect of a 10-year mandatory minimum sentence.

The activities of Mr. Cruz and others who similarly peddle fentanyl and other drugs in San Francisco for a living have been deadly for the citizens of this city.  In 2020 and 2021, approximately 1,300 people died from drug overdoses in San Francisco—nearly twice the number who died from COVID-19 over that same period.  And about three quarters of those overdose victims—or about 1,000 people—had fentanyl in their systems.[3]  The scourge continues in 2022, with San Francisco currently on pace to have nearly 600 overdose deaths by the end of this year.[4]  The area where Mr. Cruz sold his drugs is among the most seriously affected places in the city, prompting Mayor London Breed to declare a 90-day state of emergency in the Tenderloin and the surrounding area in late 2021.[5]  As the Mayor stated in her announcement, the "rapidly deteriorating conditions in the Tenderloin caused by the opioid crisis put the lives of San Franciscans in serious risk."

---

[3] Trisha Thadani, et al., *San Francisco's fentanyl crisis: A disaster in plain sight*, S.F. Chron., Feb. 2, 2022 (https://www.sfchronicle.com/projects/2022/sf-fentanyl-opioid-epidemic/).

[4] *See* Yoohyun Jung, *44 People Died in August in San Francisco from Accidental* Overdoses, S.F. Chronicle, https://www.sfchronicle.com/projects/2021/san-francisco-drug-overdoses-map/ (last updated Sept. 26, 2022).

[5] "Mayor London Breed Declares State of Emergency in the Tenderloin," Dec. 17, 2021 (https://sfmayor.org/article/mayor-london-breed-declares-state-emergency-tenderloin). On December 23, 2021, the San Francisco Board of Supervisors voted to approve Mayor Breed's Emergency Declaration in the Tenderloin.  *See* "Board of Supervisors Approves Mayor London Breed's State of Emergency Declaration in the Tenderloin," Dec. 23, 2021 (https://sfmayor.org/article/board-supervisors-approves-mayor-london-breed%E2%80%99s-state-emergency-declaration-tenderloin).  The State of Emergency was kept open for 90 days.

In this case, Mr. Cruz must overcome a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. The record demonstrates that he cannot rebut that presumption. Accordingly, the government respectfully requests that the Court order Mr. Cruz be detained pending trial.

## I.     FACTUAL BACKGROUND

### A.     Mr. Cruz Sold Fentanyl to an Undercover Officer Multiple Times and Told Him That He Sells Drugs in the Tenderloin Every Night

Law enforcement began investigating Mr. Cruz after a confidential informant identified him as a regular seller of various narcotics around the 400 block of Hyde Street in the Tenderloin. On July 19, 2022, an undercover SFPD officer (the "UC") approached Mr. Cruz in the vicinity of Eddy Street and Leavenworth Street in the Tenderloin. Mr. Cruz asked the UC what he wanted and the UC responded, "fent," at which point Mr. Cruz retrieved approximately 2 grams of a substance that he sold to the UC for $40. Later testing confirmed the substance contained fentanyl. During the controlled purchase, Mr. Cruz told the UC that he was at the same location every night if the UC liked the drugs.

On July 28, 2022, the UC approached Mr. Cruz in the vicinity of Eddy Street and Leavenworth Street and told him that he wanted to buy "40 of fent and 10 of crystal." Mr. Cruz had the UC wait while he retrieved two substances, which later tested positive for fentanyl and methamphetamine, that he sold to the UC for $50. Mr. Cruz also provided the UC with his phone number to coordinate future drug sales.

Subsequent investigation confirmed Mr. Cruz's earlier statement to the UC that he was in the Tenderloin every night selling drugs. After the July 28 controlled purchase, SFPD officers continued their surveillance of Mr. Cruz and also monitored location data associated with his cell phone and the movements of a Lincoln MKZ vehicle that he was observed driving and which was registered in his name. Through that investigation, officers learned that Mr. Cruz was generally leaving a location in Berkeley every night around 7 p.m. and traveling to the Tenderloin. He would generally return to the Berkeley location around 3 a.m. each night.

UNITED STATES' DETENTION MEMORANDUM     4
22-cr-389-RS

**B.      Mr. Cruz Was Arrested While in Possession of a Significant Amount of Drugs, Including More Than 1.3 Kilograms of Fentanyl**

On August 17, 2022, SFPD officers obtained a warrant authorizing a search of Mr. Cruz, his vehicle, and his residence in Berkeley.  That evening, officers observed Mr. Cruz exit his apartment building at 1590 Oregon Street with a black backpack, which he placed in the back driver seat of his car. Soon thereafter, officers executed the search warrant and found, among other things, the following contraband in Mr. Cruz's backpack:  1.3856 kilograms of fentanyl, 179.2 grams of methamphetamine, 99 grams of heroin, 122.3 grams of cocaine base, and 16.6 grams of cocaine.  During a search of Mr. Cruz's apartment, officers also found $18,012 in cash in his bedroom.

**C.      Mr. Cruz Has Made a Career of Selling Narcotics**

The conduct underlying the charged offenses represents only some of the most recent instances in Mr. Cruz's long career of selling narcotics, which comprises a number of incidents of increasing seriousness.  Indeed, at the time the events underlying this case occurred, Mr. Cruz was on probation and electronic monitoring in connection with an April 2022 conviction for drug-related activity.  That conviction arose from a February 11, 2021, Oakland incident in which law enforcement found approximately 383 grams of cocaine, 114 grams of methamphetamine, 22 grams of heroin, $18,960 in cash, and a rifle in Mr. Cruz's bedroom during the execution of a search warrant.  In addition to the February 2021 Oakland incident, Mr. Cruz's criminal history includes the following:

- On December 16, 2020, Mr. Cruz was arrested by California Highway Patrol after a search of his vehicle revealed various containers concealing methamphetamine, heroin, cocaine base, and cocaine along with $2,800 in cash, a large knife, and packaging materials.

- On February 25, 2019, an ex-girlfriend of Mr. Cruz filed a domestic violence report against him, alleging that he punched her multiple times on that date.  Mr. Cruz's ex-girlfriend obtained an emergency protective order in connection with this incident.  After the protective order was obtained, Mr. Cruz told an acquaintance to tell his ex-girlfriend that he would beat her up if she did not drop the charges.

- On May 20, 2018, Mr. Cruz was arrested by SFPD officers after he was observed violating a stay away order and engaging in several hand-to-hand narcotics transactions in the vicinity of

1   Hyde Street and Turk Street in the Tenderloin.

2   - On, February 19, 2017, Mr. Cruz was arrested and his probation was subsequently revoked

3   after he stabbed an individual outside a San Francisco nightclub.

4   - On at least four separate occasions in 2013 and 2014, Mr. Cruz was arrested for selling

5   cocaine base in San Francisco.[6]

6   While most of Mr. Cruz's criminal activity appears to have occurred in the Bay Area, he relocated to

7   Washington for a period in 2014 and was arrested in June of that year for selling cocaine base in Seattle.

8   There is an outstanding warrant for Mr. Cruz's arrest related to his failure to appear for a status hearing

9   in Drug Court arising from the June 2014 incident.

10         **D.    Mr. Cruz Is a Honduran National with Significant Ties to That Country**

11         Mr. Cruz illegally entered the United States in 2013 after leaving Honduras, where he is a citizen

12   and where he has significant ties.  His wife and two children returned to Honduras in 2020 and have

13   remained there since.  His mother and siblings, aside from his half brother, all reside in Honduras as

14   well.  In addition, Mr. Cruz is currently the subject of a March 2015 removal order issued by United

15   States immigration authorities.

16   **II.    <u>LEGAL STANDARD</u>**

17         Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail

18   where "the judicial officer finds that no condition or combination of conditions will reasonably assure

19   the appearance of the person as required and the safety of any other person in the community."  18

20   U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or

21   a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*,

22   767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be

23   supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be

24   supported by a preponderance of the evidence.  *Id.*  "[T]he Bail Reform Act mandates an individualized

25   evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*,

26

27   ---

28       [6] Mr. Cruz was arrested on November 4, 2014; October 25, 2014; January 13, 2014; and December 24, 2013.  Mr. Cruz was also arrested on August 28, 2013 on narcotics-related charges, though the facts underlying that arrest are not currently available to the government.

1    943 F.3d 1196, 1199 (9th Cir. 2019).  Categorical grants or denials of bail, not tethered to an

2    individualized determination, are impermissible.  *Id.*  Consideration of factors outside the articulated

3    factors set forth in Section 3142 is also disfavored.  *Id.*

4          Where there is probable cause that a defendant has violated the Controlled Substances Act and

5    faces a maximum of 10 years in prison or more (as here), courts apply a rebuttable presumption against

6    the defendant that no condition or combination of conditions reasonably will assure the defendant's

7    appearance as required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  Under this

8    scheme, the burden of production then shifts to the defendant.  *United States v. Hir*, 517 F.3d 1081, 1086

9    (9th Cir. 2008).  Although the presumption is rebuttable, it is not a "bursting bubble."  *United States v.*

10   *Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States*

11   *v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).  In other words, the presumption is not so weak that if a

12   defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or

13   jury) to decide the question without reference to the presumption."  *Id.* (further stating that such an

14   approach would "render the presumption virtually meaningless" because a defendant can "always

15   provide the magistrate with *some* reason" (emphasis added)).  Even if the defendant rebuts the

16   presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding

17   militating against release that is to be weighted along with other relevant factors.  *See U.S. v. King*, 849

18   F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999)

19   (citing *Jessup*, 757 F.2d at 389).

20         If the court concludes that the defendant has rebutted the statutory presumption of detention, the

21   court must consider four factors in determining whether the pretrial detention standard is met.  Those

22   factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence

23   against the defendant; (iii) the history and characteristics of the defendant, including the defendant's

24   character, physical and mental condition, family and community ties, past conduct, history relating to

25   drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well

26   as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature

27   and seriousness of the danger to any person or to the community that would be posed by the defendant's

28   release.  *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

UNITED STATES' DETENTION MEMORANDUM    7
22-cr-389-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.     **ARGUMENT**

      A.     **Mr. Cruz Is Subject to a Presumption in Favor of Detention**

      Mr. Cruz is charged with seven violations of 21 U.S.C. § 841(a)(1) and each of those counts carries a statutory maximum penalty of more than ten years' imprisonment.  As such, Mr. Cruz is subject to a rebuttable presumption in favor of detention.  *See* 18 U.S.C. § 3142(e)(3)(A).  In order to overcome this presumption, Mr. Cruz bears the burden to prove that he is not a flight risk *and* that his release will not endanger the community.  He cannot do so here.

      B.     **Mr. Cruz Cannot Rebut the Presumption That He Poses a Danger to the Community**

      The record demonstrates that Mr. Cruz poses a significant danger to the community.  As set forth above, he has made a career of narcotics trafficking and has most recently chosen to sell significant quantities of fentanyl—a drug that has wreaked havoc on San Francisco residents—for substantial profit. He has done so in repeated defiance of the terms of his probation and notwithstanding the fact that he was subject to location monitoring for several months preceding his August 2022 arrest.  Mr. Cruz's "continuing involvement with the distribution of drugs" militates in favor of detention.  *United States v. Wolf*, 2015 WL 4573039, at *3 (N.D. Cal. July 29, 2015); *United States v. Fulgham*, 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012) ("The Senate Report states: The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community.  Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community." (quotation marks and citation omitted)).

      Mr. Cruz's history of violence and weapons possession further reinforces the danger he poses to the community.  As noted above, police found a rifle in his bedroom when he was arrested in February 2021, and he has now been arrested while in possession of a knife on two occasions (August 2022 and December 2020).  He has also demonstrated a willingness to use dangerous weapons against others, as reflected by the February 2017 incident in which he stabbed an individual outside a San Francisco nightclub.  The domestic violence allegations against Mr. Cruz from February 2019 also raise serious concerns, although Mr. Cruz does not appear to have been arrested in connection with those allegations.

### C.     Mr. Cruz Cannot Rebut the Presumption That He Poses a Flight Risk

Pretrial detention is also warranted because of the defendant's risk of flight.  Mr. Cruz is unlawfully in the United States and is currently subject to a removal order issued by immigration authorities.  His June 2014 arrest in Seattle for narcotics trafficking suggests that he has ties in the United States outside of this District, and the outstanding warrant related to his failure to appear at subsequent court proceedings arising from that incident establishes that he has a history of absconding.  Mr. Cruz's significant family ties to Honduras, including a wife and two children living there, also reinforce the risk of flight here.  And Mr. Cruz's history of brazenly violating the terms of his probation when he was subject to location monitoring suggests that he will readily disregard conditions of release that the Court might consider here, even if more stringent monitoring were imposed.

The indictment returned by the grand jury in this case charges Mr. Cruz with numerous crimes that carry significant penalties, including a potential 10-year mandatory minimum prison sentence.  This presents Mr. Cruz with a compelling reason to violate court-ordered conditions of release and flee the District to avoid accountability.  The record demonstrates that he has both the motive and the means to do so if he were released.

## IV.     <u>CONCLUSION</u>

There are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community.  The Court should order the defendant detained pending trial.

DATED:  October 27, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


 _/s/ Jared Buszin_
Jared S. Buszin
Assistant United States Attorney